# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

RYAN GRAHAM, *et al.*,

        *Plaintiffs*,

        v.

CHRISTOPHER M. CARR, in his official capacity as Attorney General of Georgia, *et al.*,

        *Defendants*.

CIVIL ACTION

No. 1:22-cv-03613-MHC

# DEFENDANTS' OPPOSITION TO
# PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Plaintiffs Ryan Graham and the Libertarian Party of Georgia filed this lawsuit challenging their inability to operate a leadership committee pursuant to O.C.G.A. § 21-5-34.2 (the "LC Statute"). (Compl., Doc. 1, ¶ 1.) Graham is the Libertarian Party's nominee for Lieutenant Governor. (*Id.*, ¶ 2.) Plaintiffs allege that the LC Statute violates rights guaranteed to them by the First and Fourteenth Amendments of the U.S. Constitution because it allows the Republican and Democratic nominees for Lieutenant Governor to raise funds in unlimited amounts while Graham is subject to campaign contribution limits. (*Id.*)

In many respects, Plaintiffs' Complaint is similar to cases brought by former Republican Party gubernatorial primary candidate David Perdue and Democratic Party gubernatorial candidate Stacey Abrams challenging applications of the LC statute. *Perdue, et al. v. Kemp et al.*, No. 1:22-CV-0053-MHC (N.D. Ga.); *One Georgia, Inc., et al. v. Carr, et al.*, No. 1:22-CV-1130-MHC (N.D. Ga.). In both cases, this Court found that the Attorney General and members of the Georgia Government Transparency and Campaign Finance Commission ("the Commission") were not the proper parties to be enjoined, and that the scope of preliminary injunctive relief would be limited to Governor Kemp's leadership committee, Georgians First Leadership Committee, Inc. ("Georgians First"). *See Perdue,* Order of Feb. 7, 2022 [Doc. 58], p. 10 ("this

1

Court noted that, from its perspective, the scope of any preliminary injunctive relief likely would be limited to  Georgians First"); *One Georgia*, Order of April 14, 2022 [Doc. 45], p. 19 (finding injuries to be redressable only by issuance of injunctive relief against Georgians First, stating that "the issuance of an injunction to prohibit the Commission from engaging in investigatory or enforcement proceedings against One Georgia would not redress the alleged unconstitutionality of the LC Statute."). In each of these cases, the Court found that the proper means of redressing the plaintiffs' articulated injuries was by issuance of preliminary injunctive relief against Georgians First, and not against either Attorney General Carr or the members of the Commission. *Perdue*, Order of Feb. 7, 2022 at pp. 18, 38-39.

Given this Court's holdings in the *Perdue* and *One Georgia* cases, and evidenced by their citation to these cases in their Motion (Mot. for Prelim. Inj., Doc. 4, pp. 8-9), Plaintiffs in this case are already aware that injuries caused by the LC Statute are not redressable by injunctive relief against either of the named Defendants, and that the leadership committees operating pursuant to the LC Statute would be the proper parties against whom injunctive relief should be sought. Despite this Court's clear holding on substantially identical litigation, Plaintiffs ask this Court to rewrite, or blue-pen, the LC Statute to prohibit the Defendants from limiting leadership committees to nominees of

2

political parties– an action that this Court has already expressly refused to take. *See One Georgia v. Kemp*, Order of April 14, 2022 [Doc. 45], p. 32 ("Granting Plaintiffs' requested relief…would require this Court to effectively rewrite the LC Statute…This Court is unable to re-write the LC Statute in such a manner."). Nor would the issuance of an injunction to prohibit either of the named Defendants from engaging in enforcing the LC Statute redress the alleged unconstitutionality of the statute. *See id.* at p. 19, 32-33. Accordingly, Plaintiffs lack standing and have failed to demonstrate that they are likely to succeed on the merits of their claims against the named Defendants.

Furthermore, Plaintiffs have improperly named the Commission as a party defendant in this action. Claims against the Commission are barred by the Eleventh Amendment, which bars suit against a State's agencies, departments, or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest. Congress has not acted to override the State's Eleventh Amendment immunity, and Georgia has not waived this immunity. The exception provided by *Ex parte Young*, 209 U.S. 123 (1908) does not apply to the Commission, as the Commission is an agency acting as an arm of the state, and not an "officer" of the state that might be subject to suit for prospective injunctive relief. Eleventh Amendment immunity clearly bars the award of *any* preliminary injunctive

relief as to the Commission.

Plaintiffs have also failed to demonstrate a concrete injury in fact and to provide this Court with sufficient information to evaluate an "as applied" challenge to the LC Statute. Plaintiffs' only allegation of injury is that Graham "wants to" chair a leadership committee but under the terms of the LC Statute, cannot do so. (Compl., Doc. 1, ¶ 6; Mot. for Prelim. Inj, Doc. 4, p. 4). This is an insufficient showing of a concrete injury that is neither speculative nor hypothetical, particularly given that there is no indication that there exist any prospective donors that might seek to contribute funds to support Graham's campaign in excess of the $7,600.00 campaign contribution limit applicable to his campaign. Therefore, Plaintiffs have failed to establish an injury sufficient to form a basis for standing and have failed to provide the Court with sufficient information to be able to evaluate this case as an "as applied" challenge to the LC Statute.

For these reasons, the Motion for Preliminary Injunction should be denied.

## BACKGROUND

### A.    Georgia Law on Leadership Committees

Under the Georgia Government Transparency and Campaign Finance Act, no candidate for statewide elected office or their campaign committee can

receive from any person, corporation, political committee, or political party contributions which in the aggregate for an election cycle exceed $7,600 for the primary election, $7,600 for the general election, and $4,500 for a runoff election. O.C.G.A. § 21-5-41(a), (k). Effective July 1, 2021, O.C.G.A. § 21-5-34.2 permitted the creation of leadership committees, "chaired by the Governor, the Lieutenant Governor, the nominee of a political party for Governor selected in a primary election in the year in which he or she is nominated, or the nominee of a political party for Lieutenant Governor selected in a primary election in the year in which he or she is nominated." O.C.G.A. § 21-5-34.2(a). The majority caucus of the House of Representatives, the minority caucus of the House of Representatives, the majority caucus of the Senate, and the minority caucus of the Senate can also designate up to two political action committees as "leadership committees." *Id*.

A leadership committee may accept contributions or make expenditures for the purpose of affecting the outcome of any election or advocating for the election or defeat of any candidate...." O.C.G.A. § 21-5-34.2(d). A leadership committee must register with the Commission upon receiving contributions or making expenditures in excess of $500.00, and thereafter file periodic reports disclosing contributions and expenditures. O.C.G.A. § 21-5-34.2(e). The contribution limits in O.C.G.A. § 21-5-41 ordinarily applicable to candidates

5

and their campaign committees do not apply to a leadership committee's contributions or expenditures in support of a candidate or a group of named candidates. *Id.* A leadership committee can defray ordinary and necessary expenses incurred in connection with any candidate's campaign for elective office and may defray ordinary and necessary expenses incurred in connection with a public officer's fulfillment or retention of that office. O.C.G.A. § 21-5-34.2(d).

### B. Allegations in the Complaint and Plaintiffs' Motion for a Preliminary Injunction

As alleged in the Complaint, the only individual candidates for statewide office who can form a leadership committee are the Governor, the Lieutenant Governor, and the nominees of a "political party" for those office who are chosen through a primary election.[1] (Compl., Doc. 1, ¶ 14.) Under Georgia law, the Libertarian Party is a "political body" which nominates its candidates by convention. (*Id.*, ¶ 17 (citing O.C.G.A. § 21-2-172).) Plaintiffs assert that the

---

[1] O.C.G.A. § 21-2-2(25) defines the term "political party" to mean any political organization which at the preceding: (A) gubernatorial election nominated a candidate for Governor and whose candidate for Governor at such election polled at least 20 percent of the total vote cast in the state for Governor; or (B) presidential election nominated a candidate for President of the United States and whose candidates for presidential electors at such election polled at least 20 percent of the total vote cast in the nation for that office.

only candidates for statewide public office who are eligible to form a leadership committee are the candidates for Governor and Lieutenant Governor nominated by the Democratic and Republican parties. (Compl., Doc. 1, ¶ 18.)

On July 17, 2022, Burt Jones – the Republican Party's nominee for Lieutenant Governor – registered a leadership committee known as WBJ Leadership Committee, Inc. (*Id.*, ¶ 19.) On July 8, 2022, the WBJ Leadership Committee filed a campaign contribution disclosure form which, according to Plaintiffs' allegations, reflects that WBJ Leadership Committee had raised "at least $60,000 in contributions that exceed the limits with which Graham and his campaign committee must comply." (*Id.*, ¶ 20.)

Plaintiffs are Ryan Graham, the Libertarian Party's nominee for Lieutenant Governor of Georgia, and the Libertarian Party itself. Graham claims that he "wants to" chair a leadership committee "for the purpose of supporting Libertarian candidates for public office, including his own candidacy for Lieutenant Governor." Complaint, Doc. 1, ¶6. Plaintiff Graham's most recent Campaign Contribution Disclosure Report ("CCDR") shows that Graham had received a total of $6,087.22 as of June 30, 2022. (Exhibit A). His largest contribution came from the Libertarian Party and amounted to $2,061.21, which was itemized as being for "filing fees." (Exhibit B.) No information has been provided by either Plaintiff as to how they will be harmed

7

in the event they are not permitted to establish a leadership committee under the LC Statute.

In their Motion for a Preliminary Injunction, Plaintiffs ask this Court to issue a preliminary injunction to prohibit the Commission and Attorney General Carr from enforcing the LC Statute "in a manner that violates the Plaintiffs' constitutional rights" and that the requested injunction "should either: (1) prohibit the defendants from limiting leadership committees to the nominees of 'political parties,' as that terms is defined in Georgia law; or (2) prohibit the defendants from enforcing the leadership committee statute in its entirety."  (Doc. 4, p. 13.)

## ARGUMENT

### I.    Plaintiffs have not established standing.

Article III of the U.S. Constitution limits this Court's jurisdiction to "actual 'cases' or 'controversies'" and does not permit federal courts to issue advisory opinions. *Miller v. F.C.C.*, 66 F.3d 1140, 1145 (11th Cir. 1995) (citing *Flast v. Cohen*, 392 U.S. 83, 94-96 (1968)). "To have a case or controversy, a litigant must establish that he [or she] has standing, which must exist throughout all stages of litigation." *United States v. Amodeo*, 916 F.3d 967, 971 (11th Cir. 2019) (citation and internal quotation omitted).   To establish standing, the litigant must show: (1) an injury in fact that (2) is fairly traceable

to the challenged action of the defendant and (3) is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements," which, at the initial pleading stage, may be established based on "general factual allegations of injury." *Id.* at 561.

Plaintiffs fail to assert facts to establish an injury in fact, and they also fail to demonstrate redressability as to the named Defendants, none of which are given the statutory authority to declare that Graham is entitled to register his own leadership committee as the Libertarian Party's nominee for the office of Lieutenant Governor. As a result, for the reasons discussed herein, Plaintiffs lack standing, and the Motion should be denied.

**A.    Plaintiffs fail to allege an injury in fact.**

When seeking declaratory or injunctive relief, as Plaintiffs have here, litigants must "demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979). The injury must be concrete and actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiffs' only explanation as to how they might be injured by the LC Statute is the statement that Plaintiff Graham "wants to" chair a leadership committee, but is not permitted by the LC Statute

9

to do so. (Compl., Doc. 1, ¶6; Mot. for Prelim. Inj, Doc. 4, pp. 4-5). This falls far short of an allegation that could ultimately prove a real and immediate, not hypothetical or conjectural, threat of injury sufficient to form a basis for standing. *Compare Fund for Louisiana's Future v. LA Bd. of Ethics*, 2014 U.S. Dist. LEXIS 52659 at *22, 2014 WL 1514234 (E.D. La. Apr. 16, 2014) (finding that plaintiff had sufficiently alleged sufficient concrete injury by identifying donor that would make contribution in excess of limits but had declined to do so to avoid being subjected to civil and criminal penalties). Because Plaintiffs have failed to articulate a sufficiently concrete injury in fact that they have suffered as a result of the operation or enforcement of the LC Statute, they lack standing to pursue their claims and their Motion should be denied.

## B.    Plaintiffs have failed to establish an injury that is traceable to the named Defendants.

Article III standing requires that the plaintiff's injury be "'fairly traceable' to the defendant's actions and redressable by relief against *that* defendant." *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020) (emphasis in original) (quoting *Lewis v. Governor of Alabama*, 944 F.3d 1287, 1298, 1301 (11th Cir. 2019)). "A person can bring a pre-enforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a

credible threat of prosecution." *Wollschlaeger v. Governor, Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (alterations accepted; citations omitted). However, the specific factual allegations made by Plaintiffs in the Complaint and in Plaintiffs' Motion fail to show that any alleged injury is traceable to the named Defendants because the Complaint is devoid of allegations to support Plaintiffs bringing a pre-enforcement suit.

Plaintiffs name Attorney General Carr as a defendant, but the only allegations against him in the Complaint are that he is charged with enforcing the Georgia Government Transparency and Campaign Finance Act, of which the LC Statute is a part. (Compl., Doc. 1, ¶ 7.) Such a vague statement regarding alleged enforcement of the challenged statute is insufficient to satisfy the traceability requirement of standing. Here, the sole allegations that anyone could bring enforcement proceedings against Plaintiffs are the bare bones allegations in the Complaint that the Attorney General is charged with enforcing the Act – and there is absolutely no allegation in either the Complaint or in Plaintiffs' Motion that such an action has been filed or has even been threatened as to Plaintiffs.

Although the Commission does have the ability to investigate potential violations of O.C.G.A. § 21-5-34.2 and institute enforcement proceedings for such violations, the Commission does not have the authority to provide the

11

relief that Plaintiffs seek in the Motion, in that the Commission cannot expand the terms of the LC Statute to allow nominees from political bodies to have a leadership committee. As such, Plaintiffs have failed to articulate an injury that is traceable to the named Defendants, and Plaintiffs' Motion should be denied.

**C.    Plaintiffs have failed to articulate a remedy that could be redressed by the named Defendants.**

In denying the first motion for a preliminary injunction in the *One Georgia* case, this Court made it clear that this Court was unwilling to take up a pen and revise the LC Statute:

> Given the holding in *Perdue v. Kemp*, Plaintiffs in this case had two options. One of those options was to follow the framework established in *Perdue v. Kemp* and seek an injunction to prevent Georgians First from soliciting or receiving contributions unless and until Governor Kemp becomes the Republican Party's nominee for Governor. Plaintiffs instead chose a second, untenable option: to try to convince the Court to permit them to raise unlimited funds in advance of the primary under a statutory campaign finance scheme they allege is unconstitutional, and prevent an agency of the executive branch from enforcing an unambiguous Georgia law that provides that a nominee for Governor is chosen in a primary. This Court will not rewrite Georgia law to enable One Georgia to stand in the same shoes as a leadership committee that, in Plaintiffs' view, is operating in violation of the First Amendment.

*One Georgia, Inc. v. Carr*, No. 1:22-CV-1130-MHC, 2022 WL 1284057, at *12 (N.D. Ga. Apr. 14, 2022).  Likewise, the relief that Plaintiffs seek in their

Motion for a Preliminary Injunction is for this Court to rewrite the LC Statute, by either having this Court expand the definition of which individuals are entitled to a leadership committee or to prohibit the Commission and Attorney General Carr from "enforcing the leadership committee statute in its entirety." (Doc. 4, p. 13.) Here, Plaintiffs had the option to seek an injunction to prevent WBJ Leadership Committee from soliciting or receiving contributions, but instead, Plaintiffs chose an "untenable option." *One Georgia*, 2022 WL 1284057, at *12. Therefore, because Plaintiffs' alleged injuries are not redressable by an injunction against the named Defendants, Plaintiffs lack standing, and their Motion should be denied.

## II.   Plaintiffs' Motion should be denied as to the Commission due to lack of subject matter jurisdiction.

Plaintiff's claims against the Commission are barred by the Eleventh Amendment. The Eleventh Amendment bars suit against a State's agencies, departments, or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest. *Kentucky v. Graham*, 473 U.S. 159, 163 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). In order to override the Eleventh Amendment, Congress must do so with "an unequivocal expression of congressional intent to 'overturn the constitutionally guaranteed immunity of the several States.'" *Pennhurst*,

13

465 U.S. at 99 (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979)). The Supreme Court has held that "§1983 does not override a State's Eleventh Amendment immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989). *See also Smith v. Deal,* 760 F. App'x 972, 975 (11th Cir. 2019)(state agencies are not subject to suit under § 1983).

Nor has the State of Georgia waived its immunity. A waiver of Eleventh Amendment immunity must be express. "The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305-306 (1990) (internal quotation and citation omitted). Here, the State of Georgia has specifically preserved its immunity. *See*, Ga. Const. art. I, § II, ¶ IX (f).

An exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123 (1908), for suits against state officers for prospective injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997). Here, however, Plaintiffs have sued the Georgia Government Transparency and Campaign Finance Commission, a state agency operating as an "arm of the state," which is entitled to Eleventh Amendment Immunity. *See Miccosukee Tribe of Indians v. Florida State Ath. Comm'n,* 226 F.3d 1226,

14

1233-34 (11th Cir. 2000). The Commission cannot be sued no matter the relief sought.   Therefore, the claims against the Commission are barred by the Eleventh Amendment. [2]

## III.   The factors to be considered in granting injunctive relief do not favor the entry of a preliminary injunction

A preliminary injunction is an "extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). In order to obtain a preliminary injunction, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that granting the relief would not be adverse to the public interest. *Jones v. Governor of Fla.*, 950

---

[2] Claims against the Commission must fail for the additional reason that the Commission is not a "person" within the meaning of §1983. *See Will*, 491 U.S. at 70-71; *Mt. Healthy Bd. Of Educ. v. Doyle*, 429 U.S. 276, 280 (1977).  The specific language of § 1983 allows a plaintiff to sue only "person[s]" who violate his civil rights. *See* 42 U.S.C. § 1983.   In other words, the statutory language of 42 U.S.C. § 1983 "creates no remedy against a State." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 (1997). Because the Commission is not a "person" under § 1983, Plaintiff's federal claims against the Commission are not cognizable.

F.3d 795, 806 (11th Cir. 2020) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000)).

Plaintiffs have failed to establish that they are likely to succeed on the merits. Plaintiffs claim that the LC Statute is unconstitutional "as applied" to the Plaintiffs. Plaintiffs' Motion for Prelim. Inj., Doc. 4, pp. 9, 10. However, Plaintiffs have not provided the Court with sufficient information to evaluate the case as an "as applied" challenge because they have made no showing of their present or future ability to raise funds from individual donors in amounts sufficient to require the establishment of a leadership committee. Plaintiff Graham's most recent CCDR indicates that he has raised a total of $6,087.22 as of June 30, 2022. (Exhibit A). His largest contribution came from the Libertarian Party and amounted to $2,061.21, which was itemized as being for "filing fees." No facts are given as to why either Plaintiff would be injured by Graham's inability to form a leadership committee; Plaintiffs simply state that "Graham wants to form a leadership committee for the purpose of supporting Libertarian candidates for public office, including his own candidacy for Lieutenant Governor." Plaintiffs' Mot. for Prelim. Inj., Doc. 4, pp. 4-5.

These facts are insufficient to provide this Court with a basis to evaluate the Plaintiffs' "as applied challenge." As the Eleventh Circuit Court of Appeals stated in *Worley v. Cruz-Bustillo*, 717 F.3d 1238, 1249-50 (11th Cir. 2013):

> [W]e are not equipped to evaluate this case as an "as applied" challenge because the record does not tell us enough about what Challengers are doing … We also know little if anything about how much money they intend to raise or how many people they wish to solicit. We will not speculate about their future success as fundraisers. Based on the record we do have, we consider this challenge … to be a facial challenge. This means that Challengers cannot prevail unless they can prove 'that no set of circumstances exists under which the [regulations] would be valid.

Plaintiffs have provided the Court with no information about how the inability to operate a leadership committee could conceivably burden Plaintiffs' ability to exercise their rights of free speech or political association, and the Court therefore lacks sufficient information to be able to evaluate the case as an "as-applied" challenge to the LC Statute. Nor have Plaintiffs made any showing that there exists no set of circumstances under which the LC Statute would be valid, making a facial challenge to the LC Statute also unlikely to succeed on the merits.

For the same reasons, Plaintiffs also cannot demonstrate that they will suffer irreparable injury if the relief they seek is not granted. Plaintiffs have expressed nothing more than the abstract desire of Graham to operate a leadership committee, and have offered the Court not even a hint of how either Plaintiff might be injured if this desire remains unmet. Plaintiffs therefore fail to demonstrate that they will suffer any irreparable injury in the event the relief they seek is not granted.

17

For these reasons, the Plaintiffs are not entitled to the extraordinary relief of a preliminary injunction. Plaintiffs' Motion for Preliminary Injunction should therefore be denied.

## CONCLUSION

The Motion for a Preliminary Injunction should be denied because Plaintiffs have failed to establish standing to bring this action against the named Defendants and because they have failed to clearly demonstrate that they are likely succeed on the merits of their claims. Therefore, Defendants respectfully request that this Court deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted this 16th day of September, 2022.

Christopher M. Carr
Attorney General
Georgia Bar No. 112505

Bryan K. Webb
Deputy Attorney General
Georgia Bar No. 743580

Russell D. Willard
Senior Assistant Attorney General
Georgia Bar No. 760280

*/s/Elizabeth T. Young*
Elizabeth T. Young
Assistant Attorney General

18

Georgia Bar No. 707725
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA  30334
eyoung@law.ga.gov
Telephone: 404-458-3425

*/s/ Elizabeth Vaughan*
Elizabeth Vaughan
Assistant Attorney General
Georgia Bar No. 762715
Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, Georgia 30334
evaughan@law.ga.gov
Telephone: 404-458-3549

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing has been prepared in Century Schoolbook 13, a font and type selection approved by the Court in L.R. 5.1(B).

*/s/Elizabeth Wilson Vaughan*