IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Ryan Graham**, et al.<br><br>　　Plaintiffs,<br><br>vs.<br><br>**Christopher M. Carr**, et al.,<br><br>　　Defendants. | Case No. 1:22-cv-3613-MHC<br><br>**Plaintiffs' Reply in Support of their Motion for a Preliminary Injunction** |

The defendants' response in opposition to the plaintiffs' motion for summary judgment is remarkable for what it lacks: the defendants offer no justification for Georgia's patently unconstitutional leadership committee statute. (ECF 10.) They essentially concede defeat on the merits and rely instead on various technicalities in a halfhearted attempt to avoid the inevitable. But the defendants' arguments miss their mark, and the Court should therefore grant a preliminary injunction.

## I. The plaintiffs are suffering an injury in fact.

The defendants first argue that the plaintiffs lack standing because the leadership committee statute does not injure them in any real or immediate way. (ECF 10 at 9-10.) While the defendants concede that the statute does not allow Graham to create a leadership committee (*id.* at 6-7), they claim that the verified complaint's allegation that Graham wants to establish a leadership committee to support Libertarian candidates is not enough to establish an injury. The defendants suggest that Graham can only establish an injury if he can first identify a donor who wants to contribute more than the ordinary limit. (*Id.* at 10.)

But the unpublished district-court case on which the defendants rely does not establish that such a donor is necessary to establish injury here. It establishes only that such a donor is *sufficient* to establish injury in a challenge to Louisiana's campaign contribution limits on independent political committees. *See Compare Fund v. La. Bd. of Ethics*, 2014 WL 1514234, at *7-8 (E.D. La. Apr. 16, 2014).

Here, though, the plaintiffs' alleged injury does not flow from the limits themselves but from the unequal limits imposed on candidates

running for the same office. Relying on *Davis v. FEC*, 554 U.S. 724, 729 (2008), this Court found that "the unequal campaign finance scheme established by [the leadership committee statute]" constituted enough injury to confer standing in a challenge to a different aspect of the statute, but the same reasoning applies here. *One Georgia, Inc., v. Carr*, ___ F. Supp. 3d ___, 2022 WL 1284057, at *5 (N.D. Ga. Apr. 14, 2022). The inequality is harm enough.

In any event, Graham *has* identified a donor who wants to give him more than the limit on a candidate committee allows. (Ex. 1: Craig decl.). So Graham has established enough injury to challenge the leadership committee statute even under the defendants' proposed standard.

## II. The plaintiffs' injury is traceable to the named defendants.

The defendants next argue that the plaintiffs lack standing because "the Commission does not have the authority to provide the relief that Plaintiffs seek in the Motion." (ECF 10 at 11-12.) That argument is beside the point, though. Traceability asks not who can provide relief but who is causing the injury.

Here, the entities charged with enforcing campaign contributions limits are causing the injury. There is no dispute that the Attorney General and the Commission together have that responsibility. (*Id.* at 11.) Graham would face a credible threat of prosecution by these entities if he received political contributions over the applicable limit.

"A person can bring a pre-enforcement suit when he has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution." *Wollschlaeger v. Governor of Fla.*, 848 F.3d 1293, 1304 (11th Cir. 2017) (cleaned up). In the First Amendment context, "plaintiffs do not have to expose themselves to enforcement in order to challenge a law…. Rather, an actual injury can exist when the plaintiff is chilled from exercising her right to free expression or forgoes expression in order to avoid enforcement consequences." *Wilson v. State Bar of Ga.*, 132 F.3d 1422, 1428 (11th Cir. 1998) (citations omitted).

In this case, therefore, the plaintiffs need not wait until they face an actual prosecution to challenge the application of the leadership committee statute against them. *See, e.g., One Georgia Inc.*, 2022 WL 1284057, at *5.

4

### III. The plaintiffs' injury is redressable by an injunction against the defendants.

The defendants next argue that the plaintiffs lack standing because an injunction against the Attorney General and the Commission would not redress the plaintiffs' injury. (ECF 10 at 12-13.) They argue, based on this Court's ruling in *One Georgia,* that the only relief that would solve the problem here is an injunction against the leadership committee chaired by one of Graham's opponents, Burt Jones, preventing that committee from soliciting or receiving contributions over the limit that applies to Graham. *(Id.* at 13.)

Not so. For one thing, an injunction against Jones' leadership committee would not solve the problem because a leadership committee can support or oppose "any candidate." O.C.G.A. § 21-5-34.2(d). An injunction against Jones' leadership committee would not prohibit any other leadership committee from supporting Jones' candidacy (or opposing Graham's) with contributions or expenditures that exceed the ordinary limit. Indeed, Jones' leadership committee could contribute its assets to a leadership committee established by the Senate Republican Caucus, which could then spend those assets to support Jones' campaign.

5

In addition, the requested injunction would solve the problem here. The plaintiffs ask the Court to prohibit the defendants from enforcing the leadership committee statute in an unconstitutional manner, and they suggest that the injunction should either: (1) prohibit the defendants from limiting leadership committees to the nominees of "political parties," as that term is defined in Georgia law; or (2) prohibit the defendants from enforcing the leadership committee statute in its entirety. (ECF 4 at 13.) Either option would undo the plaintiffs' injury.

Under the first option, the Court could enjoin the defendants from enforcing the part of O.C.G.A. § 21-5-34.2(a) which limits eligibility to establish leadership committees to the nominees of "political parties." Then any candidate for governor or lieutenant governor, including Graham, would be eligible to establish a leadership committee, and Graham would no longer face the threat of prosecution for accepting unlimited contributions. Under the second option—prohibiting the defendants from enforcing O.C.G.A. § 21-5-34.2 in its entirety— leadership committees would no longer exist, and all candidates would be subject to the same limit on contributions and expenditures. Either way, Graham would be on an equal footing with his opponents.

The defendants' reliance on *One Georgia* is misplaced. The plaintiffs in that case challenged a different part of the leadership committee statute that allowed Georgia's Governor to raise unlimited funds, based solely on his status as Governor, before he became the Republican Party's nominee. *See One Georgia*, 2022 WL 1284057, at *7. They sought an injunction that would allow a Democratic candidate to raise unlimited funds before she became the Democratic Party's nominee because she faced no opposition for the nomination. The Court denied relief, reasoning that the requested relief would require the Court to rewrite other provisions of Georgia law that determine when a candidate is recognized as a political party's nominee. *Id.* at *6.

But the circumstances here are different. Graham is already the duly nominated candidate of the Libertarian Party, which is recognized as a political body under Georgia law. The constitutional infirmity lies directly in the leadership committee statute itself, which expressly limits leadership committees to political-party candidates and so excludes political-body candidates like Graham. Unlike *One Georgia*, complete relief here can be found in the challenged statute itself simply by enjoining, rather than re-writing, the offending provisions.

The defendants' suggestion, moreover, that a federal court's injunction may not modify state law to bring it into compliance with the United States Constitution is unfounded. Federal courts can, and do, modify state laws all the time, subject to later revision by state legislatures. *See, e.g., Cooper v. Raffensperger*, 472 F. Supp. 3d 1282, 1296 (N.D. Ga. 2020) (lowering the signature requirements for ballot access by 30 percent due to COVID-19); *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1341 (N.D. Ga. 2018) (re-writing Georgia's absentee-ballot procedures to cure a due process violation), *stay denied sub nom. Ga. Muslim Voter Project*, 2018 WL 7822108 (11th Cir. Nov. 2, 2018); *Green Party of Ga. v. Kemp*, 171 F. Supp. 3d 1340, 1373 (N.D. Ga. 2016) (lowering the statutory number of signatures required for presidential candidates to 7,500), *aff'd*, 674 F. App'x 974 (11th Cir. 2017); *Larios v. Cox*, 314 F. Supp. 2d 1357, 1372 (N.D. Ga. 2004) (three-judge district court) (ordering state officials to implement a court-ordered redistricting plan). The requested injunction here is nothing out of the ordinary.

## IV.   Sovereign immunity is no bar to the requested relief.

The defendants next argue that the plaintiffs' claims against the Commission itself are barred by sovereign immunity. (ECF 10 at 13-15.)

8

Maybe so, but the defendants do not suggest that sovereign immunity is any bar to the requested injunction against the Attorney General. Such an injunction would bind "other persons in active concert or participation with" the Attorney General, Fed. R. Civ. P. 65(d)(2)(C), which includes the Commission because of its joint enforcement responsibilities with the Attorney General. *See* O.C.G.A. § 21-5-6(b)(14). An injunction against the Attorney General alone would therefore provide the same relief as an injunction against both the Attorney General and the Commission.

In light of the Commission's decision to assert sovereign immunity, moreover, counsel for the parties have agreed to add one or more individual members of the Commission as defendants. An unopposed motion to do so will be forthcoming shortly.

## V. The *Winter* factors favor a preliminary injunction.

Finally, the defendants argue that the plaintiffs have failed to establish the first two *Winter* factors: likelihood of success and irreparable harm. (ECF 10 at 15-18.) *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Their argument mirrors their earlier argument on standing: because Graham has not identified a potential

9

donor, he is unlikely to succeed and has suffered no harm. But, as already discussed above, Graham *has* identified such a donor, and the patent inequality of the leadership statute is injury enough anyway. The *Winter* factors therefore support an injunction here.

Respectfully submitted this 21st day of September, 2022.

***/s/ Bryan L, Sells*** 
Georgia Bar No. 635562
Attorney for the Plaintiffs
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com

## Certificate of Compliance

I hereby certify that this document was prepared in 13-point Century Schoolbook in compliance with Local Rules 5.1(C) and 7.1(D).


**/s/ Bryan L. Sells**
Georgia Bar No. 635562
Attorney for the Plaintiff
The Law Office of
Bryan L. Sells, LLC
Post Office Box 5493
Atlanta, Georgia 31107-0493
(404) 480-4212 (voice/fax)
bryan@bryansellslaw.com